IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| SEFULUONO F. BANE and RUTA A. TULENKUN, | ) ) ) | CIVIL NO. 05-00577 JMS/BMK |
| Plaintiffs, | ) ) ) | ORDER GRANTING IN PART AND DENYING IN PART: (1) DEFENDANT'S SECOND MOTION |
| vs. | ) ) ) | TO DISMISS, OR IN THE ALTERNATIVE MOTION FOR |
| SAILORS' UNION OF THE PACIFIC; JOHN DOES 1-10; JANE DOES 1-10; and DOE ENTITIES, | ) ) ) ) | ALTERNATIVE MOTION FOR SUMMARY JUDGMENT; AND (2) DEFENDANT'S SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' |
| Defendants. | ) ) ) | INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIMS |
| _____ | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART: (1)
DEFENDANT'S SECOND MOTION TO DISMISS, OR IN THE
ALTERNATIVE MOTION FOR SUMMARY JUDGMENT; AND
(2) DEFENDANT'S SUPPLEMENTAL MOTION FOR SUMMARY
JUDGMENT ON PLAINTIFFS' INTENTIONAL INFLICTION OF
EMOTIONAL DISTRESS CLAIMS**

## I. INTRODUCTION

Plaintiffs Sefuluono Bane ("Bane") and Ruta Tulenkun ("Tulenkun") (collectively, "Plaintiffs"), contend that Defendant Sailors' Union of the Pacific ("Defendant" or "SUP") discriminated against them on the basis of race and gender. Tulenkun currently alleges a claim for violation of Title VII of the Civil Rights Act of 1964, and both Plaintiffs allege a claim for intentional infliction of emotional distress ("IIED"). Currently before the court is Defendant's Second

Motion to Dismiss, or in the Alternative Motion for Summary Judgment

("Defendant's Motion"), and Defendant's Supplemental Motion for Summary

Judgment on Plaintiffs' IIED claims ("Defendant's Supplemental Motion").

Based on the following, the court GRANTS in part and DENIES in part

Defendant's Motions.

## II. <u>BACKGROUND</u>

### A.    Factual Background

Defendant is a union of unlicensed sailors that refers its members for

work on vessels under contract with Defendant.  The Hawaii branch of SUP refers

member sailors for positions at Matson Navigation Company ("Matson").

Plaintiffs are union members of Defendant, and allege that Defendant

discriminated against them by, among other things, manipulating its process to

refer jobs at Matson to male, non-Samoan members.

All of Defendant's job referrals must be called through its Hiring

Hall, and posted on the "shipping board."  Def.'s Ex. 1, Bane Dep. Ex. 3 at 50-51,

Rule 13.[1]  The Hiring Hall conducts two job calls per weekday at 10:30 a.m., and

_____

[1] Defendant's Motion is supported by two exhibits.  Defendant's Exhibit 1 consists of Bane's deposition transcript and marked exhibits, and Defendant's Exhibit 2 consists of Tulenkun's deposition transcript and marked exhibits.  Each exhibit is hundreds of pages long, making the court's task of determining the relevant facts time-consuming and difficult.  In citing to facts contained in Defendant's exhibits, the court provides as much identifying information as

(continued...)

2

2:00 p.m.  Duvall Decl. ¶¶ 9-10; *see also* Def.'s Ex. 1, Bane Dep. Ex. 3 at 50-51, Rule 13 (stating that the Hiring Hall shall be open from 8:00 a.m. through 4:30 p.m. Monday through Friday, with jobs called at regular intervals to be specified by that port).  The 2:00 p.m. job call includes jobs that are either left over from the 10:30 a.m. job call, or those that become available in the interim.  Duvall Decl. ¶ 10.

To be eligible for a job referral, the member must have a valid shipping card.  Def.'s Ex. 1, Bane Dep. Ex. 3 at 50-52, Rules 3, 14 & 51. Shipping cards are valid for three months, after which time its holder must apply for a new card.  *Id.* at 51, Rule 15.  To receive a new shipping card, the member must pay dues for the current quarter.  *Id.* at 52, Rule 48.

To participate in a job call, members must report to the Hiring Hall in person and register, where they are issued shipping cards showing the date of their registration and the sequence number of that day's registration.  Def.'s Ex. 1, Bane Dep. Ex. 3 at 50, Rule 3.  Registrants are divided into several classes based on seniority (A-D).  *Id.* at Rule 4.  Those in classes with higher seniority are given job referral preference over those with less seniority (i.e., individuals in class A are

---

[1](...continued)
possible.

given seniority over individuals in class B). *Id.* at Rule 5. Members within a class have "equal rights in bidding for jobs for which they are qualified, regardless of the total years of seniority . . . ." *Id.* However, those within a class are given preference based on the date of their shipping card registration. Duvall Decl. ¶ 5.

### 1.   *Tulenkun*

Tulenkun is a Samoan woman who is currently ranked as an Able Bodied Seaman class "B." Pls.' Ex. F; Def.'s Ex. 1 at 60. In support of her Title VII claim, Tulenkun asserts that on March 1, 2005, Michael Duvall, the port agent for Defendant who runs the Hiring Hall, offered her a 1-day maintenance job for March 2, 2005 so that she would not attend the March 2, 2005 10:30 a.m. job call.[2] Tulenkun Decl. ¶ 7; Def.'s Ex. 2 at 16-17, 122-23; Def.'s Ex. 2, Tulenkun Dep. Ex. B ¶ 6(d); Pls.' Ex. L. Duvall also informed her that a permanent Ordinary Seaman job was open, but that he would be giving it to Laau Castro, who is Hawaiian/Chinese, and who had a newer registration card than Tulenkun.[3] Def.'s

---

[2] The parties debate whether the admissible evidence establishes that Duvall "tracked" Tulenkun down to offer her this position. *See* Pls.' Opp'n 10; Def.'s Reply 13. Because this fact, if established, is not necessary for the summary judgment determination, the court does not determine whether such evidence is admissible at this time.

[3] The parties' submissions indicate some confusion as to when this incident occurred. During the hearing, however, the parties agreed that the shipping log indicates that on March 1, 2005, Tulenkun received her 1-day job referral for March 2, 2005, and Shermaih Iaea received the Ordinary Seaman job referral at the March 2, 2005 10:30 a.m. job call.

4

Ex. 2 at 16-17, 122-23; Def.'s Ex. 2, Tulenkun Dep. Ex. B. ¶ 6(d).

At the March 2, 2005 10:30 a.m. job call, Duvall announced the Ordinary Seaman job referral, and awarded it to Shermaih Iaea, a Caucasian male and friend of Duvall's, who was present and registered at the Hiring Hall.  Duvall Decl. ¶ 35; Pls.' Ex. L.  This Ordinary Seaman job referral was requested by Matson on February 28, 2005.  Pls.' Ex. L; *see also* Duvall Reply Decl. ¶ 4 (explaining columns of Dispatch Sheet).

Tulenkun was not present at the March 2, 2005 job call.  Duvall Decl. ¶ 43.  Further, documents indicate that Tulenkun was no longer current with her registration at this time.  Def.'s Ex. 2, Tulenkun Dep. Ex. J; Def.'s Ex. 2 at 85-86 (stating that Ex. J indicates that the time on her registration ran out and that she registered again on March 4, 2005).  Plaintiffs assert that Duvall has allowed members to continue to receive job referrals without paying their dues.  Bane Decl. ¶ 12; Tulenkun Decl. ¶ 9.  Indeed, Tulenkun herself received her 1-day maintenance job for March 2, 2005 even though she was not current with her dues.  Tulenkun Decl. ¶ 7.

Tulenkun further alleges that this March 2005 incident, along with others, caused her severe emotional distress.  Specifically, Tulenkun asserts that Defendant: (1) manipulated the job process to prevent her from receiving jobs in

November 2003 and May 2004, *see* Tulenkun Supplemental Decl. ¶¶ 8-9; (2)

repeatedly denied her training while male SUP members attended classes, *id.* ¶ 7;

and (3) published articles in the SUP newsletter and made other negative

statements at the Hiring Hall about her lawsuit, making Tulenkun fearful of

reprisals from her co-workers.  *Id.* ¶ 11.  During jobs, co-workers have told her

that "women don't belong on ships!", "some of the SUP members disagree with

women crew members being on ships!", and "you shouldn't have filed a lawsuit!"

*Id.*  Tulenkun asserts that Defendant's acts have caused her stress in worrying

about lost wages, concern over caring for her family, and made her fearful at work.

She has been prescribed pain medication for her migraine headaches.  *Id.* ¶ 14.

### 2.    *Bane*

Bane is a Samoan woman who is ranked as an Able Bodied Seaman

class "C."  Bane Decl. ¶ 3.  Bane alleges that Defendant intentionally inflicted

emotional distress on Bane through its discriminatory job referral process and in

handling her complaints.

For example, Bane alleges that Defendant manipulated the job

referral process on several occasions, including in March 2004, April 2005, and

again in 2007.  Bane Supplemental Decl. ¶¶ 7, 10-11.

Further, in response to missing a job referral in April 2005, Bane

telephoned the San Francisco office on April 26, 2005 to report that SUP did not properly post or announce jobs, and that jobs were being offered to individuals without being announced.  Bane Decl. ¶ 6; Def.'s Ex. 1 at 134.  The San Francisco Dispatcher responded: "What are you bitching about, you're a C card bitching about a stand by job!"  Bane Decl. ¶ 6; Def.'s Ex. 1 at 135.  After Bane explained that it was a 4-month job, the dispatcher replied, "you're real nosy" and hung up the phone.  Bane Decl. ¶ 6; Def.'s Ex. 1 at 135.  Bane next went to the Hiring Hall and spoke with Duvall, who told her that she should have checked her shipping rules before calling the San Francisco office to complain.  Bane Decl. ¶ 7; Def.'s Ex. 1 at 137-38.  Duvall further said, "you want to make it hard for me?  I know a lot of people, want to make it hard for me, I can make it hard for you too."  Pls.' Ex. D at 29.

Bane asserts that as a result of Defendant's actions, she suffers from a series of ailments such as migraines, frustration, anxiety, depression, isolation, and increased blood pressure, and has sought counsel from her pastor.  Bane Supplemental Decl. ¶ 13; *see* John Bane Decl. ¶ 12; *see generally* Brown Decl.

## B.     Procedural History

Plaintiffs filed a Complaint on September 7, 2005, and an Amended Complaint on November 16, 2005, which alleges three causes of action: (1) Count

I, breach of the duty of fair representation, 29 U.S.C. § 185; (2) Count II, violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e; and (3) a third count also labeled "Count II, violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e," but setting forth a claim of IIED under Hawaii state law.  On June 28, 2006, Defendant filed a Motion to Dismiss or in the Alternative for Summary Judgment, arguing that Plaintiffs' claims were barred by the statute of limitations and that any claims not time-barred were without merit.  On September 8, 2006, the court denied that motion because more discovery was necessary to determine the scope of Plaintiffs' claims.  Doc. No. 52.  The court further found that due to the statute of limitations period, Plaintiffs could not recover for (1) any breach of SUP's duty of fair representation that arose before March 7, 2005, or (2) any discrete acts of discrimination under Title VII that occurred prior to October 19, 2004 for Bane, and October 21, 2004 for Tulenkun.  The court further found that, to the extent the second Count II of the Amended Complaint stated an IIED claim, that Plaintiffs could not recover for any acts that occurred prior to September 7, 2003.[4]

On October 17, 2007, Defendant filed its current Motion to Dismiss,

---

[4] Given the court's ruling regarding the applicable statute of limitations, this Order does not address events that occurred prior to the applicable statute of limitations for each of Plaintiffs' claims.

or in the Alternative for Summary Judgment.[5]  Plaintiffs filed an Opposition on December 13, 2007, and filed a "Supplemental Opposition" on December 19, 2007.  Defendant filed a Reply on December 20, 2007.  A hearing was held on December 31, 2007.

During the December 31, 2007 hearing, Plaintiffs' counsel conceded that Tulenkun's breach of duty of fair representation claim, and Title VII claim to the extent based on a failure to train, were barred by the statute of limitations.[6]  Although the court struck Plaintiffs' Supplemental Opposition as improper and untimely, the court construed it as a Federal Rule of Civil Procedure 56(f) Motion seeking a continuance to allow for the depositions of two individuals that may support Bane's Title VII and breach of duty of representation claims.

---

[5] Defendant's Motion failed to comply with the Local Rules ("L.R.").  Defendant included no concise statement of facts, see L.R. 56.1(a), and did not "extract and highlight only the relevant portions" of each exhibit relied upon in a concise statement of facts.  L.R. 56.1(c). Instead, Defendant submitted several declarations, and attached as Exhibit 1 Bane's deposition transcript with all of its exhibits, and as Exhibit 2 Tulenkun's deposition and exhibits.  Defendant cannot plead ignorance of the Local Rules; the court has already warned both parties that the Local Rules require the filing of a concise statement of facts.  See Doc. No. 52.  Defendant's submission highlights the reasons for the Local Rules -- to present evidence in a manageable and understandable format that allows the court to identify the relevant issues.  As the court further warned the parties at the hearing, both parties are on notice that further violation of the court's rules will lead to sanctions.

[6] Upon an independent review of the record, the court agrees that Tulenkun's breach of duty of fair representation claim, and Title VII claim to the extent based on failure to train, are barred by the statute of limitations.  The court therefore GRANTS summary judgment on Tulenkun's breach of duty of fair representation claim, and on Tulenkun's Title VII claim to the extent based on a failure to train.

Bane subsequently agreed to dismiss her Title VII and breach of duty of representation claims.[7]  The court further granted leave for Defendant to file a Supplemental Motion for Summary Judgment addressing Plaintiffs' IIED claims.[8]  Defendant filed its Supplemental Motion on January 22, 2008, Plaintiffs filed an Opposition on February 5, 2008, and Defendant filed a Reply on February 12, 2008.  The court held a hearing on Plaintiffs' Supplemental Motion on February 15, 2008.

## III.  <u>STANDARD OF REVIEW</u>

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Rule 56(c) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986); *see also Broussard v. Univ. of*

---

[7]  A stipulation to dismiss these claims was filed on January 22, 2008.

[8]  In its September 8, 2006 Order, the court recognized that the Amended Complaint included two "Count II (Title VII of the Civil Rights Act of 1964)" claims, but that second Count II appeared to be a claim for negligent or intentional infliction of emotional distress.  Plaintiffs never amended their pleadings to clarify that they indeed were alleging claims for IIED. Defendant therefore did not address the merits of Plaintiffs' IIED claims in its Motion for Summary Judgment, and the court found that permitting Defendant to file a supplemental motion was appropriate.

*Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).  "In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 321 (internal quotations omitted).

The burden initially lies with the moving party to show that there is no genuine issue of material fact.  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  The moving party may discharge its burden by showing that there is "an absence of evidence to support the nonmoving party's case."  *Celotex*, 477 U.S. at 325.  "When the moving party has carried its burden under Rule 56(c) its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [and] come forward with specific facts showing that there is a genuine issue for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and internal quotation signals omitted).

An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue is material if the resolution of the factual dispute affects the outcome of the claim or defense under substantive law governing the case.  *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d

11

912, 919 (9th Cir. 2001).  When considering the evidence on a motion for

summary judgment, the court must draw all reasonable inferences on behalf of the

nonmoving party.  *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

# IV.  ANALYSIS

## A.    Tulenkun's Title VII Claim

### *1.    Legal Framework*

Section 703(c)(1) of Title VII makes it "an unlawful employment

practice for a labor organization . . . to discriminate against[ ] any individual

because of his race, color, religion, sex, or national origin."  42 U.S.C.

§ 2000e-2(c)(1).  Claims of discrimination under Title VII are evaluated under the

burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411

U.S. 792 (1973).  *See Beck v. United Food & Commercial Workers Union, Local

99*, 506 F.3d 874, 882 (9th Cir. 2007) (stating that the *McDonnell-Douglas*

burden-shifting framework applies to a Title VII action against a union).

"Adapting the *McDonnell Douglas* criteria to a § 703(c)(1) action, a

union member can make a prima facie claim of discrimination by introducing

evidence that the member 'was singled out and treated less favorably than others

similarly situated on account of race or any other criterion impermissible under the

statute.'"  *Id.* at 882 (*quoting Gay v. Waiters' & Dairy Lunchmen's Union*, 694

F.2d 531, 537 (9th Cir. 1982)).  "[A] showing of disparate treatment raises an inference of discrimination 'because experience has proved that in the absence of any other explanation it is more likely than not that those actions were bottomed on impermissible considerations.'"  *Id.* at 883 (*quoting Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 579-80 (1978)).

To establish a prima facie case of discrimination, a plaintiff must offer proof that: (1) she belongs to a protected class; (2) she was qualified and applied for a position for which defendant was seeking applicants; (3) despite her qualifications, she was rejected from the position, and (4) after her rejection, the position remained open and defendant continued to seek applicants from similarly-qualified individuals.  *McDonnell-Douglas,* 411 U.S. at 802; *see also Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006); *Pejic v. Hughes Helicopters, Inc.*, 840 F.2d 667, 672 (9th Cir. 1988).  "A plaintiff's failure to offer evidence establishing a necessary element of [her] prima facie case will ordinarily be fatal to [her] claim."  *Lyons v. England*, 307 F.3d 1092, 1113 (9th Cir. 2002).

"The requisite degree of proof necessary to establish a *prima facie* case . . . on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence."  *Cordova v. State Farm Ins. Cas.*, 124 F.3d 1145, 1148 (9th Cir. 1997); *see also Chuang v. Univ. of Cal. Davis*, 225 F.3d

13

1115, 1124 (9th Cir. 2000); *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994); *Sischo-Nownejad v. Merced Cmty. Coll. Dist.*, 934 F.2d 1104, 1110-11 (9th Cir. 1991).  By establishing this relatively low threshold, the courts did not intend to render the standard devoid of meaning or substance.  Instead, the burden at this stage is structured to prevent imposing onerous or burdensome requirements which would disqualify plaintiffs from bringing claims even where defendants could not forward legitimate reasons for their actions.  Thus, at the prima facie stage, the plaintiff only need set forth some small amount of relevant, admissible evidence as to each element of the discrimination claim.

After a plaintiff establishes a prima facie showing of discrimination, the burden of production under the *McDonnell Douglas* framework shifts to the defendant to forward a legitimate -- which is to say non-discriminatory -- reason for its actions.  *McDonnell Douglas Corp.*, 411 U.S. at 802.  "The union must provide reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the action." *Beck*, 506 F.3d at 883 (citation and quotation signals omitted).  If the defendant does so, the burden shifts back to the plaintiff to show that the given reason is merely pretext for a discriminatory motive.  *Cornwell,* 439 F.3d at 1028; *see also Nilsson v. City of Mesa*, 503 F.3d 947, 954 (9th Cir. 2007) (Plaintiff "bears the ultimate burden of

14

submitting evidence indicating that the [Defendants'] proffered reason is merely a pretext for a retaliatory motive." (citation and quotation signals omitted)).

### 2.    *Application of Framework to Tulenkun*

Defendant argues that Tulenkun cannot establish a prima facie case of discrimination because: (1) Tulenkun was not present at the March 2, 2005 job call; (2) Tulenkun was disqualified from any job referrals because she was not registered with the Hiring Hall as of March 2, 2005; (3) Defendant's actions did not cause Tulenkun to lose any jobs because Matson, and not Defendant, has sole control in hiring decisions; and (4) Tulenkun's conclusions that Defendant discriminated against her on the basis of her gender and race are insufficient to raise a fact question.  The court addresses each of these arguments.

First, given the facts presented, Tulenkun does not need to prove that she applied for the job referral for Ordinary Seaman that was ultimately given to Iaea.  A person's failure to submit a job application does not foreclose a Title VII claim where applying would be a futile act.  *See Int'l Broth. of Teamsters v. United States*, 431 U.S. 324, 367-68 (1977); *see also Hudson v. Chi. Transit Auth.*, 375 F.3d 552, 558 (7th Cir. 2004) ("If a plaintiff does not apply for a job vacancy that is posted, he cannot make a prima facie case for unlawful discrimination or retaliation under Title VII unless the plaintiff demonstrates that the employer's

discriminatory practices deterred plaintiff from applying."); *Bouman v. Block*, 940 F.2d 1211, 1221 (9th Cir. 1991) ("A plaintiff is not barred from bringing such an action where an application would have been a useless act serving only to confirm a discriminatee's knowledge that the job he wanted was unavailable to him." (quotation signals omitted)); *Bernard v. Gulf Oil Corp.*, 841 F.2d 547, 570 (5th Cir. 1988) (holding that "it is not legally sufficient or legitimate for an employer to reject an employee who does not have notice or an opportunity to apply for a promotion").

The facts, taken in the light most favorable to Tulenkun, establish that Duvall told her that he would award the Ordinary Seaman referral to Laau Castro, who is Hawaiian/Chinese, and who had a newer registration card than Tulenkun (giving Tulenkun priority over Castro). Tulenkun Decl. ¶ 7; Def.'s Ex. 2 at 16-17, 122-23. Given Duvall's statement to her, Tulenkun could have reasonably believed that the Ordinary Seaman referral would not be offered in one of the Hiring Hall job calls, and/or that applying for the job would be futile. Accordingly, that Tulenkun did not attend the March 2, 2005 job call does bar her Title VII claim.[9]

---

[9] The SUP Dispatch Sheet also indicates some apparent irregularities in how the Ordinary Seaman job referral was handled. This job referral was ordered on February 28, 2005,

(continued...)

16

Second, the court rejects Defendant's argument that Tulenkun was not qualified for the Ordinary Seaman referral as a matter of law because her registration had lapsed.  The evidence on the record shows that Tulenkun's lack of registration did not prevent her from receiving the 1-day job referral, Pls.' Ex. L, and other members continued to receive job referrals without paying their dues. Bane Decl. ¶ 12; Tulenkun Decl.  ¶ 9.

Third, the court likewise rejects Defendant's argument that Tulenkun's Title VII claim is barred because Matson has sole control over who it hires.  Tulenkun cannot request a job from Matson without first receiving a referral from Defendant.  Def.'s Ex. 1, Bane Dep. Ex. 2, at 50, Rule 11.  While Matson could conceivably reject one of Defendant's job referrals, Defendant controls whether Tulenkun can even apply for a position with Matson.

Defendant's reliance on *Lawrence v. Legitimate Theatre Employees Local*, 1996 WL 107297 (S.D.N.Y. Mar. 12, 1996), for the proposition that a labor organization is not liable where it only refers members for employment, is unavailing.  *Lawrence* is not controlling law for this court, and is nonetheless

---

[9](...continued)
but was not filled until March 2, 2005.  This evidence appears to contradict Duvall's assertions that Defendant announces all the job positions that it has received to date at each job call.  Duvall ¶¶ 9-10.  Defendant provides no explanation for why this job referral was not announced until March 2, 2005.

distinguishable on its facts.  In *Lawrence*, the plaintiff alleged that his union

discriminated against him after a white member was offered a permanent usher

position with the Rogers Theater.  *Lawrence*, 1996 WL 107297, at *4.  The court

rejected this claim because the union "merely refers individuals on an emergency

basis as temporary substitutes" to Rogers Theater and "no facts exist in the record

from which a rational jury could find that anyone other than the Rogers Theater

made the decision to hire [the other employee] for a full time usher position."  *Id.*

at *5.  Tulenkun, however, can receive a job with Matson only through

Defendant's referral process.  These facts establish a cognizable Title VII claim.

*See, e.g.*, *Daniels v. Pipefitters' Ass'n Local Union No. 597*, 945 F.2d 906, 923

(7th Cir. 1991) (affirming judgment on Title VII claim based on various

discriminatory acts, including that union denied plaintiff job referrals);

*Commonwealth v. Local Union 542*, 807 F.2d 330, 331 (3d Cir. 1986) (discussing

district court's finding of discrimination due to union's job referrals from

exclusive hiring hall); *Virgo v. Local Union 580*, 107 F.R.D. 84, 88 (S.D.N.Y.

1985) (finding that plaintiff stated a claim of continuing discrimination based on

defendant's referral practices).

      Finally, Defendant's argument that Tulenkun's Title VII claim cannot

survive summary judgment based on mere conclusions that Defendant

discriminated against her is both legally and factually incorrect.  Under the

*McDonnell Douglas* framework, "a plaintiff may establish a prima facie case of

discrimination absent direct evidence . . . ."  *Noyes v. Kelly Servs.*, 488 F.3d 1163,

1168 (9th Cir. 2007).  Tulenkun has established a prima facie case of

discrimination by putting forth evidence that (1) Tulenkun is a Samoan female, (2)

Tulenkun would have applied for the 4-month long job referral if it were properly

announced, (3) Tulenkun was not given the 4-month long job referral, and (4)

Defendant referred a similarly-qualified non-Samoan man for this position.  *See*

*McDonnell Douglas*, 411 U.S. at 802.  Because Tulenkun has met her burden in

establishing a prima facie case,[10] the court DENIES summary judgment on this

claim.

**B.      Intentional Infliction of Emotional Distress**

        Defendant argues a panoply of reasons why Plaintiffs' IIED claims

should be dismissed and/or that summary judgment should be granted.  The court

---

[10]  Defendant's Motion attacked only Tulenkun's prima facie case of discrimination, and did not set forth a "legitimate, nondiscriminatory reason" for its actions.  In their Opposition, however, Plaintiffs argued that Defendant's explanations why Tulenkun did not receive the March 2005 job referral were pretext.  Pls.' Opp'n 13-14.  In its Reply, Defendant argued that its reasons were legitimate, and Tulenkun cannot establish pretext.  Def.'s Reply 12-13.  This issue, raised for the first time in Plaintiffs' Opposition, is not sufficiently addressed by the parties for the court to make this determination.  It does appear, however, that Defendant has failed to set forth legitimate reasons that explain away (1) Duvall's statement to Tulenkun that the Ordinary Seaman referral would go to Castro, (2) the discrepancies in the SUP Shipping Log, or (3) that Tulenkun received other job referrals despite a lapsed registration.

addresses each in turn.

### 1.     *Plaintiffs' Pleading of Their IIED Claims*

Defendant argues that Plaintiffs' IIED claims should be dismissed

because (1) Plaintiffs waived their IIED claims by deleting them in the Amended

Complaint, and (2) the Amended Complaint states a claim for punitive damages

based on Title VII, not an IIED claim.  The court rejects both these arguments.

Plaintiffs' original complaint alleged four causes of action, titled: (1)

breach of duty of fair representation; (2) Title VII of the Civil Rights Act of 1964;

(3) intentional infliction of emotional distress; and (4) punitive or exemplary

damages.  The IIED claim alleged the following:

> 33.     The actions and/or inactions of Defendant constitute
> extreme and outrageous behavior which exceeds all bounds
> usually tolerated by decent society, all done with malice and
> the intent to cause, or the knowledge that it would cause severe
> mental and/or emotional distress to Plaintiffs.
> 34.     As a result of the above statements, acts and/or conduct
> of Defendant, Plaintiffs did suffer and continue to suffer severe
> mental and/or emotional distress and thereby sustained
> damages, as aforesaid, in an amount to be demonstrated at the
> time of trial herein.

Doc. No. 1.

On November 16, 2005, Plaintiffs filed their Amended Complaint,

which includes Count I, breach of duty of fair representation, and two counts

labeled "Count II, Title VII of the Civil Rights Act of 1964." The parties do not

dispute that the first Count II states a Title VII violation. The second Count II

includes verbatim the same allegations as the Complaint's IIED claim:

> 33.    The actions and/or inactions of Defendant constitute
> extreme and outrageous behavior which exceeds all bounds
> usually tolerated by decent society, all done with malice and
> the intent to cause, or the knowledge that it would cause severe
> mental and/or emotional distress to Plaintiffs."
> 34.    As a direct result of Defendant's actions and/or
> inactions, Plaintiffs did suffer and continue to suffer severe
> mental and/or emotional distress and thereby sustained
> damages, as aforesaid, in an amount to be demonstrated at time
> of trial herein.

These allegations track the elements of an IIED claim. *See Hac v.*

*Univ. of Haw.*, 102 Haw. 92, 106-07, 73 P.3d 46, 60-61 (2003) "[T]he elements of

the tort of intentional infliction of emotional distress are 1) that the act allegedly

causing the harm was intentional or reckless, 2) that the act was outrageous, and 3)

that the act caused 4) extreme emotional distress to another."). Accordingly, the

court finds that the second count II of the Amended Complaint states an IIED

claim.

For this reason, the court also rejects Defendant's argument that

Plaintiffs deleted their IIED claim in the Amended Complaint. As conceded by

Plaintiffs' counsel during the hearing, the title of the IIED claim as a second Count

II Title VII violation was in error.  While Plaintiffs should have clarified their

Amended Complaint -- especially after being alerted to this error over one year

ago[11] -- the claim is not so ambiguous as to prevent Plaintiffs from proceeding

with their IIED claim.

> **2.**      ***Jurisdiction and Scope of Plaintiffs' IIED Claims***

Defendant makes several jurisdictional arguments, including that: (1)

the court has no jurisdiction over Bane's IIED claim, (2) alternatively, the court

should use its discretion to deny jurisdiction over Bane's IIED claim, and (3)

Tulenkun's IIED claim may include only those events that make up the basis of

her Title VII claim.

28 U.S.C. § 1367(a) provides that:

> [I]n any civil action of which the district courts have original
> jurisdiction, the district courts shall have supplemental
> jurisdiction over all other claims that are so related to claims in
> the action within such original jurisdiction that they form part
> of the same case or controversy under Article III of the United
> States Constitution. . . .

Pursuant to § 1367(a), "nonfederal claims are part of the same 'case' as federal

claims when they 'derive from a common nucleus of operative fact' and are such

---

[11]  In its September 8, 2006 Order, the court noted that the second Count II "appears to be a claim for negligent or intentional infliction of emotional distress, rather than based on Title VII."  Doc. No. 52 n.2.

that a plaintiff 'would ordinarily be expected to try them in one judicial proceeding.'" *Trustees of Constr. Ind. & Laborers Health & Welfare Trust v. Desert Valley Landscape & Maint., Inc*., 333 F.3d 923, 925 (9th Cir. 2003) (*quoting Finley v. United States*, 490 U.S. 545, 549 (1989)).

Because the allegations supporting Bane's IIED claim "form part of the same case or controversy" as her federal claims, the court has supplemental jurisdiction over Bane's IIED claim. That Bane no longer has any federal claims does not deprive the court of supplemental jurisdiction over her IIED claim. *See* 28 U.S.C. § 1367(c). Accordingly, the court turns next to whether it should decline jurisdiction over Bane's IIED claim.

The court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . (3) the district court has dismissed all claims over which it has original jurisdiction."[12] 28 U.S.C. § 1367(c). "[W]hen deciding whether to

---

[12] While this action still includes Tulenkun's Title VII claim, that claim does not "form part of the same case or controversy" as Bane's IIED claim for purposes of 28 U.S.C. § 1367(c). For example, if Bane had originally brought only an IIED claim with Tulenkun's federal claims, the court would not have supplemental jurisdiction over Bane's IIED claim. That Tulenkun and Bane filed a single complaint does not prevent the court from exercising its discretion to decline jurisdiction over a set of facts wholly separate from those that make up the federal claim. *See Ryan v. Ill. Dep't of Children & Family Servs.*, 185 F.3d 751, 764-65 (7th Cir. 1999) (upholding district court's dismissal under § 1367(c)(3) of a state law claim against various defendants where no federal claims survived summary judgment against those defendants, even though federal claims still stood against other defendants); *see also Reynolds v. County of San Diego*, 84 F.3d 1162, 1171 (9th Cir. 1996).

23

exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" *City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (*quoting Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).

Here, Bane's IIED claim involves allegations separate from those made by Tulenkun in support of her Title VII and IIED claim.  Specifically, Bane alleges that Defendant caused her emotional distress by preventing her from receiving job referrals in March 2004, April 2005, and again in 2007, and yelling at and/or threatening her in April 2005.  Bane Supplemental Decl. ¶¶ 7, 10-11. Completely apart from these allegations, Tulenkun alleges that her emotional distress stems from Defendant preventing her from receiving job referrals in November 2003 and May 2004, denying her training, and publishing articles in the SUP newsletter and making other negative statements at job calls about her lawsuit.[13]  Tulenkun Supplemental Decl. ¶¶ 7-11.  Because allowing Bane's IIED claim to proceed with Tulenkun's claims would complicate and extend the issues for trial, the court declines to exercise supplemental jurisdiction over Bane's IIED

---

[13]  Bane and Tulenkun did discuss with each other Defendant's allegedly discriminatory acts.  However, Bane has not argued -- nor is there any support for the proposition -- that Bane can base her IIED claim on Defendant's acts toward Tulenkun.

claim. *See Fichman v. Media Center*, ---F.3d---, 2008 WL 115139, at *5 (9th Cir.

Jan. 14, 2008) (finding that "the district court did not abuse its discretion in

declining to exercise supplemental jurisdiction over the state claims" where

summary judgment was granted on the federal claims).

Finally, the court rejects Defendant's argument that the allegations

supporting Tulenkun's IIED claim may include only those events that make up the

basis of her Title VII claim.  The statute of limitations for Tulenkun's Title VII

claim is 300 days prior to the filing of her EEOC complaint, while the statute of

limitations for her IIED claim is two years.  Doc. No. 52.  Due to the difference in

the limitations period, additional allegations support Tulenkun's IIED claim that

are not part of her Title VII claim.  These additional facts still "derive from a

common nucleus of operative fact" as the Title VII claim, and Tulenkun "would

ordinarily be expected to try them in one judicial proceeding."  *See Trustees of

Constr. Ind.*, 333 F.3d at 925.

In sum, the court DISMISSES Bane's IIED claim without prejudice

for Bane to file in state court.[14]  Further, Tulenkun may base her IIED claim on

---

[14]  28 U.S.C. § 1367(d) provides that "[t]he period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period."

facts within the two-year statute of limitations period.

### 3.    *Tulekun's IIED Claim*

Defendant argues that Tulenkun[15] has not raised a material question

of fact that Defendant's conduct was outrageous.

"[T]he elements of the tort of intentional infliction of emotional

distress are 1) that the act allegedly causing the harm was intentional or reckless,

2) that the act was outrageous, and 3) that the act caused 4) extreme emotional

distress to another."  *Hac*, 102 Haw. at 106-07, 73 P.3d at 60-61 (adopting the

elements of IIED prescribed by the Restatement (Second) of Torts (1965)).  The

Restatement describes what constitutes "outrageous" conduct:

> It has not been enough that the defendant has acted with an
> intent which is tortious or even criminal, or that he has
> intended to inflict emotional distress, or even that his conduct
> has been characterized by "malice," or a degree of aggravation
> which would entitle the plaintiff to punitive damages for
> another tort.  Liability has been found only where the conduct
> has been so outrageous in character, and so extreme in degree,
> as to go beyond all possible bounds of decency, and to be
> regarded as atrocious, and utterly intolerable in a civilized
> community.  Generally, the case is one in which the recitation
> of the facts to an average member of the community would
> arouse his resentment against the actor, and lead him to
> exclaim, "Outrageous!"

---

[15]  Because the court dismisses Bane's IIED claim, the court limits its analysis to whether summary judgment should be granted on Tulenkun's IIED claim.

Restatement (Second) of Torts § 46, cmt. d. (1965).  "The question whether the actions of the alleged tortfeasor are . . . outrageous is for the court in the first instance, although where reasonable persons may differ on that question it should be left to the jury."  *Nagata v. Quest Diagnostics Inc.*, 303 F. Supp. 2d 1121, 1127 (D. Haw. 2004) (*citing Shoppe v. Gucci Am., Inc.*, 94 Haw. 368, 387, 14 P.3d 1049, 1068 (2000)).

Hawaii "courts have generally been reluctant to define conduct as outrageous."  *Id.* (*citing Shoppe*, 94 Haw. at 387, 14 P.3d at 1068 (finding that abusive verbal attacks by an employer directed at an employee did not rise to the level of outrageous conduct as a matter of law); *Keiter v. Penn Mut. Ins. Co.*, 900 F. Supp. 1339, 1348 (D. Haw. 1995) (finding that the defendant's conduct which resulted in a significant increase in the premium payment on plaintiffs' life insurance policy was not outrageous conduct as a matter of law); *and Lapinad v. Pacific Oldsmobile-GMC, Inc.*, 679 F. Supp. 991, 996 (D. Haw. 1988) (stating that an employer must have engaged in conduct beyond merely firing an employee for unfair reasons in order for the conduct to possibly be considered outrageous)).

For example, in *Shoppe*, 94 Haw. at 387, 14 P.3d at 1068, the Hawaii Supreme Court affirmed summary judgment dismissing an employee's IIED claim where her manager had (1) verbally attacked her by yelling "you have to start

27

doing your job" and slamming down the phone, (2) singled her out to wear more makeup because the company "is aiming for a much younger look," and (3) on one occasion "chastised plaintiff in front of other employees about her attire and need to comb her hair." *See also Machado v. Int'l Assoc. of Heat & Frost Insulators & Asbestos Workers*, 454 F. Supp. 2d 1056, 1063 (D. Haw. 2006) (finding that violations of collective bargaining agreement and attempts to remove plaintiff from his job were not outrageous conduct).

While "sexually harassing behavior, racial slurs, and accusations of criminal conduct could all possibly be considered outrageous conduct," *see Nagata*, 303 F. Supp. 2d at 1128 (*citing Lapinad*, 679 F. Supp. at 996), conduct that does not fit into any of these categories may still raise a question of fact. *Cf. id.* (determining that defendant's delay in disclosing error in drug test could be considered outrageous). For example, a question of fact may exist where the plaintiff alleges that the defendant retaliated against her for engaging in protected activity. *See Lopes v. Kapiolani Med. Ctr. for Women & Children*, 410 F. Supp. 2d 939, 957 (D. Haw. 2005) (*citing Kalawe v. KFC Nat'l Mgmt. Co.*, 1991 WL 338566, at *5 (D. Haw. July 16, 1991)).

Construing the facts in the light most favorable to Tulenkun, the court finds that Tulenkun has raised a genuine issue of material fact that Defendant's

conduct was outrageous.[16]  In her declaration, Tulenkun describes that Defendant:

(1) manipulated the job referral process to prevent her from receiving jobs in

November 2003 and May 2004, *see* Feb. 5, 2008 Tulenkun Decl. ¶¶ 8-9;

(2) repeatedly denied her training that was given to male SUP members, *id.*  ¶ 7;

and (3) published articles in the SUP newsletter and made other negative

statements at job calls about her lawsuit.[17]  *Id.* ¶ 11.  Because reasonable persons

may differ as to whether these acts are outrageous, the court DENIES Defendant's

Motions for Summary Judgment on Tulenkun's IIED Claim.

## V.  CONCLUSION

   For the reasons stated above, the court GRANTS in part and DENIES

in part Defendant's Motions for Summary Judgment as follows: The court

---

[16]  With no support or explanation, Defendant limited its argument to whether Defendant's alleged manipulation of the job referral process constituted IIED.  The court disagrees that Tulenkun's allegations are so limited.

  The court also rejects Defendant's argument that an inference of no discriminatory conduct arises because Duvall awarded Tulenkun 35 job referrals in the 2005 calendar year.  *See* Def.'s Supplemental Br. 18.  Defendant cites no evidence that Tulenkun was awarded these jobs, much less that the job referrals were similar to those that Defendant allegedly manipulated.  Further, whether Tulenkun received other jobs does not address whether Defendant's other acts caused Tulenkun emotional distress.

[17]  Tulenkun also asserted that co-workers made negative statements to her, but has set forth no facts from which this court can determine whether these statements should be attributed to Defendant, or that Defendant knew about them.  *See Mukaida v. Hawaii*, 159 F. Supp. 2d 1211, 1233 (D. Haw. 2001) ("Employers are subject to liability for coworker harassment if they know or should know about the harassment and fail to redress that harassment adequately." (*citing Star v. West*, 237 F.3d 1036, 1038 (9th Cir. 2001)).  In making its summary judgment determination, the court does not rely on these statements.

GRANTS summary judgment on Tulenkun's duty of fair representation claim,

GRANTS summary judgment on Tulenkun's Title VII claim to the extent based on

a failure to train, DENIES summary judgment on Tulenkun's Title VII claim to the

extent based on job referrals, and DENIES summary judgment on Tulenkun's IIED

claim.  Pursuant to 28 U.S.C. § 1367(c), the court declines jurisdiction over Bane's

IIED claim, and DISMISSES this claim without prejudice to Bane filing in Hawaii

state court.

As a result of the court's ruling, the following Tulenken claims remain

for trial: 1)  Title VII claim to the extent based on job referrals; and 2) IIED claim.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, February 19, 2008.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Bane et al. v. Sailors' Union of the Pacific et al.*, Civ. No. 05-00577 JMS/BMK, Order Granting in Part and Denying in Part: (1) Defendant's Second Motion to Dismiss, or in the Alternative Motion for Summary Judgment; and (2) Defendant's Supplemental Motion for Summary Judgment on Plaintiffs' Intentional Infliction of Emotional Distress Claims