IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SEFULUONO F. BANE and RUTA A. TULENKUN, | ) CIVIL NO. 05-00577 JMS/BMK |
| | ) |
| | ) ORDER (A) GRANTING BANE'S |
| Plaintiffs, | ) MOTION FOR |
| | ) RECONSIDERATION OF ORDER |
| vs. | ) GRANTING IN PART AND |
| | ) DENYING IN PART: |
| SAILORS' UNION OF THE | ) (1) DEFENDANT'S SECOND |
| PACIFIC; JOHN DOES 1-10; JANE | ) MOTION TO DISMISS, OR IN THE |
| DOES 1-10; and DOE ENTITIES, | ) ALTERNATIVE MOTION FOR |
| | ) SUMMARY JUDGMENT; AND |
| Defendants. | ) (2) DEFENDANT'S |
| | ) SUPPLEMENTAL MOTION FOR |
| | ) SUMMARY JUDGMENT ON |
| | ) PLAINTIFFS' IIED CLAIMS; AND |
| | ) (B) GRANTING DEFENDANT'S |
| | ) MOTION FOR SUMMARY |
| | ) JUDGMENT ON BANE'S IIED |
| _____ | ) CLAIMS |

**ORDER (A) GRANTING BANE'S MOTION FOR RECONSIDERATION OF ORDER GRANTING IN PART AND DENYING IN PART: (1) DEFENDANT'S SECOND MOTION TO DISMISS, OR IN THE ALTERNATIVE MOTION FOR SUMMARY JUDGMENT; AND (2) DEFENDANT'S SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' IIED CLAIMS; AND (B) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON BANE'S IIED CLAIMS**

## I. INTRODUCTION

In its February 19, 2008 Order Granting in Part and Denying in Part:

(1) Defendant's Second Motion to Dismiss, or in the Alternative Motion for

Summary Judgment; and (2) Defendant's Supplemental Motion for Summary Judgment on Plaintiffs' Intentional Infliction of Emotional Distress Claims ("February 19, 2008 Order"), the court declined to exercise supplemental jurisdiction over Plaintiff Sefuluono Bane's ("Bane") only remaining claim for intentional infliction of emotional distress ("IIED")[1] because (1) her claim involves allegations separate from those made by Plaintiff Ruta Tulenkun ("Tulenkun") in support of Tulenkun's Title VII and IIED claims, and (2) allowing Bane's IIED claim to proceed with Tulenkun's claims would complicate and extend the issues for trial.  On February 22, 2008, Bane filed a Motion for Reconsideration, and filed a "First Supplement" on February 25, 2008 (collectively, "Bane's Motion for Reconsideration").[2]  On March 3, 2008,

---

[1]  In addition to her IIED claim, Bane had alleged claims for violations of Title VII and breach of duty of representation.  Defendant's Motion for Summary Judgment, filed on October 17, 2007, addressed all of Bane's claims.  Plaintiffs filed a substantive response, and also sought a continuance to allow for the depositions of two individuals that could support Bane's Title VII and breach of duty of representation claims.  During the December 31, 2007 hearing on Defendant's Motion for Summary Judgment, the court granted Plaintiffs' request for a continuance to allow for this discovery.  Bane was unable through subsequent discovery to establish a fact question on these claims, and a stipulation to dismiss these claims was filed on January 22, 2008.

[2]  Bane submitted numerous exhibits in support of her Motion for Reconsideration, but provided no reason why she did not submit them in Plaintiffs' Opposition to Defendant's Motions for Summary Judgment.  Bane does not argue (nor could she) that these exhibits are "newly discovery evidence," and the court does not include them in its analysis.  *See* Local Rule 60.1 (providing that reconsideration is permitted only where there is "(a) Discovery of new material facts not previously available; (b) Intervening change in law; [or] (c) Manifest error of

(continued...)

Defendant filed an Opposition, and on March 5, 2008, the court held a hearing.

Based on the following, the court GRANTS Bane's Motion for Reconsideration, and exercises its discretion to maintain jurisdiction over Bane's IIED claim. Turning to the merits of Defendant's Motions for Summary Judgment,[3] the court GRANTS Defendant's Motions for Summary Judgement on Bane's IIED claim.

## II. <u>BACKGROUND</u>

The factual background of this case was previously set forth in the court's February 19, 2008 Order. The court therefore reiterates only those facts relevant to Bane's IIED claims:[4]

---

[2](...continued)
law or fact.").

[3] Defendant filed two motions addressing Plaintiffs' IIED claims. Defendant's October 17, 2007 Motion for Summary Judgment argued for summary judgment on all of Plaintiffs' claims, but did not address the merits of Plaintiffs' IIED claims due to ambiguity in Plaintiffs' Amended Complaint. The court therefore found that permitting Defendant to file a supplemental motion was appropriate, and Defendant filed a Supplemental Motion for Summary Judgment on January 22, 2008.

[4] During the March 5, 2008 hearing, the court questioned Plaintiffs' counsel whether, if the court did exercise discretion to keep jurisdiction over Bane's IIED claim, what allegations Bane contended were part of her IIED claim. Specifically, Bane had submitted evidence of post-Complaint actions by Defendant in her Opposition to Defendant's Motions for Summary Judgment, but had not (1) filed any motion pursuant to Federal Rule of Civil Procedure 15(d) to supplement her pleadings, or (2) amended her Rule 26(a)(1)(A) disclosures. Defendant asserted that it had no notice that post-Complaint events were part of Bane's IIED claim, and had not taken the necessary discovery of these events. The court explained that because Defendant would clearly be prejudiced by permitting the post-Complaint events to be considered as part of

(continued...)

Bane is a member of Defendant, a union of unlicensed sailors that refers its members for work on vessels under contract with Defendant.  Bane alleges that Defendant intentionally inflicted emotional distress on her by preventing her from receiving a job referral in March 2004, and mistreating her when she made complaints.

Regarding job referrals, Bane asserts that on March 17, 2004, she learned that two job openings existed at Matson Paint and Rigging, and attended the 2:00 p.m. job call at the Hiring Hall held by Defendant.  Bane Supplemental Decl. ¶ 7.  Michael Duvall, the port agent for Defendant who runs the Hiring Hall, told her that he would not announce the openings until the next day.  *Id.*  Since Bane was the most senior sailor present, she would have received one of these jobs.  *Id.*  Duvall instead announced these openings at the March 18, 2004, 10:30 a.m. job call, where Bane was no longer the most senior sailor present and did not receive a job.  *Id.*

Regarding her complaints, Bane telephoned Defendant's San

---

[4](...continued)
Bane's IIED claim, and because Bane failed to show that her lack of disclosure under Rule 26(a)(1)(A) was substantially justified or harmless under Rule 37(c), the court would not consider Bane's post-Complaint allegations as part of any reinstated IIED claim.  In response, Plaintiffs' counsel agreed that the court should consider only pre-Complaint events in ruling on Bane's Motion for Reconsideration and Defendant's Motions for Summary Judgment.  The court therefore limits its recitation of the facts to those that occurred prior to the filing of the Complaint.

Francisco office on April 26, 2005 to report that Defendant did not properly post or announce jobs, and that jobs were being offered to individuals without being announced. *Id.* ¶ 10. The San Francisco Dispatcher responded: "What are you bitching about, you're a C card bitching about a stand by job!" *Id.* After Bane explained that it was a 4-month job, the dispatcher replied, "you're real nosy" and hung up the phone. *Id.* Bane next went to the Hiring Hall and spoke with Duvall. Duvall told her that she should have checked her shipping rules before calling the San Francisco office to complain. Bane Decl. ¶ 7; Def.'s Ex. 1, 137-38. Duvall further said, "you want to make it hard for me? I know a lot of people, want to make it hard for me, I can make it hard for you too." Bane Supplemental Decl. ¶ 10; Pls.' Ex. D, 29.

Bane asserts that as a result of Defendant's actions, she suffers from a series of ailments such as migraines, frustration, anxiety, depression, isolation, and increased blood pressure, and has sought counsel from her pastor. Bane Supplemental Decl. ¶ 13; *see* John Bane Decl. ¶ 12; *see generally* Brown Decl.

## III.  STANDARDS OF REVIEW

### A.    Motion for Reconsideration

A "motion for reconsideration must accomplish two goals. First, a motion for reconsideration must demonstrate reasons why the court should

reconsider its prior decision.  Second, a motion for reconsideration must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision."  *Donaldson v. Liberty Mut. Ins. Co.*, 947 F. Supp. 429, 430 (D. Haw. 1996); *Na Mamo O 'Aha 'Ino v. Galiher*, 60 F. Supp. 2d 1058, 1059 (D. Haw. 1999).

Courts have established only three grounds justifying reconsideration: (1) an intervening change in controlling law; (2) the discovery of new evidence not previously available; and (3) the need to correct clear or manifest error in law or fact in order to prevent manifest injustice.  *Mustafa v. Clark County Sch. Dist.*, 157 F.3d 1169, 1178-79 (9th Cir. 1998); *Great Hawaiian Fin. Corp. v. Aiu*, 116 F.R.D. 612, 616 (D. Haw. 1987), *rev'd on other grounds*, 863 F.2d 617 (9th Cir. 1988); *see also* Local Rule 60.1 (providing that reconsideration is only permitted where there is "(a) Discovery of new material facts not previously available; (b) Intervening change in law; [or] (c) Manifest error of law or fact.").

**B.**    **Summary Judgment**

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Rule 56(c) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential

to the party's case, and on which that party will bear the burden of proof at trial."
*Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986); *see also Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999). "In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 321 (internal quotations omitted).

The burden initially lies with the moving party to show that there is no genuine issue of material fact. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The moving party may discharge its burden by showing that there is "an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. "When the moving party has carried its burden under Rule 56(c) its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [and] come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and internal quotation signals omitted).

An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is material if the resolution of the factual

dispute affects the outcome of the claim or defense under substantive law governing the case.  *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001).  When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party.  *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

## IV.  ANALYSIS

### A.  Motion for Reconsideration

Bane argues that the court committed error in declining to exercise supplemental jurisdiction over her IIED claim because (1) Bane may recover for emotional distress based on Defendant's actions directed to Tulenkun, and (2) Bane will testify at Tulenkun's trial regarding the acts that make up her IIED claim such that judicial economy weighs in favor of the court maintaining jurisdiction over her claim.  The court addresses each of these arguments.

First, the court rejects Bane's argument that Defendant's acts towards one plaintiff can form the basis of another plaintiff's IIED claim.  Bane cites no law to support her position, and the court could find no Hawaii case allowing such theory.  Indeed, the Restatement (Second) of Torts, which Hawaii has relied upon

in defining the scope of an IIED claim,[5] recognizes a claim only where the plaintiff is (1) present at the time of the outrageous conduct, and (2) an immediate family member of the third party:

> (1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.
> (2) Where such conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress
> > (a) to a member of such person's immediate family who is present at the time, whether or not such distress results in bodily harm, or
> > (b) to any other person who is present at the time, if such distress results in bodily harm.

Restatement (Second) of Torts § 46 (1965).  Numerous courts have adopted some form of the Restatement's requirements.  *See, e.g., Baldonado v. El Paso Natural Gas Co.*, 176 P.3d 277 (N.M. 2007) (adopting Restatement's two-prong approach for third-party claims); *Limone v. United States*, 336 F. Supp. 2d 18, 44 (D. Mass. 2004) (requiring a family member to prove "both (a) substantially contemporaneous knowledge of the outrageous conduct and (b) a severe emotional response" (citations and quotation signals omitted)); *see also Grimsby v. Samson*, 530 P.2d 291, 293-94 (Wash. 1975) (discussing that the majority of states require

---

[5]  *Hac v. University of Hawaii*, 102 Haw. 92, 106-07, 73 P.3d 46, 60-61 (2003) expressly adopted the elements of IIED prescribed by the Restatement (Second) of Torts (1965).

the plaintiff/close relative to witness the outrageous conduct, because otherwise, liability would be unlimited).

Based on the above, the court believes that the Hawaii Supreme Court would apply at least some form of the Restatement (Second) of Torts § 46 to allow an IIED claim where the plaintiff is both a relative of the third party, and present to witness the outrageous conduct. Here, neither Bane nor Tulenkun allege that they witnessed the outrageous conduct directed to the other. Further, to allow either Bane or Tulenkun to base an IIED claim on conduct directed to the other would expand IIED liability beyond what Hawaii courts have thus far recognized. The court therefore finds that based on the facts of this case, each of Plaintiffs' IIED claims are limited to Defendant's acts that are directed at that individual, *i.e.*, Defendant's acts towards one plaintiff cannot be the basis of IIED recovery for the other. Accordingly, reconsideration is not warranted on this ground.

Turning to Bane's second argument, whether Bane would be permitted to testify at Tulenkun's trial about the alleged mistreatment Bane experienced is governed by Federal Rules of Evidence 401 and 403. Tulenkun plans to offer Bane's testimony as probative of Defendant's intent to discriminate against Tulenkun. Bane Mot. Reconsideration 8. Generally, prior acts of discrimination -- whether directed to Tulenkun or a third party -- may be relevant

10

in determining the ultimate question whether Defendant intentionally discriminated against Tulenkun because of her race or gender. *See Tennison v. Circus Circus Enter., Inc.*, 244 F.3d 684, 689 (9th Cir. 2001) (discussing admissibility of testimony about discriminatory acts directed toward third party); *see also Lyons v. England*, 307 F.3d 1092, 1111 (9th Cir. 2002) ("[u]ntimely evidence of [an] employer's discriminatory acts 'may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue.'" (*quoting United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977)). Whether such testimony meets the probative value/prejudice balancing test of Rule 403 turns, at least in part, on the closeness in time in which these other alleged acts occurred, and the similarity to the plaintiff's claims. *See Tennison*, 244 F.3d at 689 (affirming court's determination to exclude evidence of discrimination against co-workers that occurred over five years before the statute of limitations cut-off period, but allowing more recent evidence).

Bane broadly asserts that Defendant discriminated against her by manipulating the job referral process to her detriment in March 2004. As Bane argues, these allegations may be relevant in determining whether Defendant intentionally discriminated against Tulenkun on the basis of race and sex. Because Bane may be permitted to testify at Tulenkun's trial about Bane's

allegations of discrimination,[6] the court determines that judicial economy weighs in favor of the court maintaining jurisdiction over Bane's IIED claim. The court therefore GRANTS Bane's Motion for Reconsideration, and REVERSES the February 19, 2008 Order to the extent it declines to exercise jurisdiction over Bane's IIED claim. As a result, the court will exercise supplemental jurisdiction over Bane's IIED Claim.

**B.     Bane's IIED Claim[7]**

"[T]he elements of the tort of intentional infliction of emotional distress are 1) that the act allegedly causing the harm was intentional or reckless, 2) that the act was outrageous, and 3) that the act caused 4) extreme emotional distress to another." *See Hac v. Univ. of Haw.*, 102 Haw. 92, 106-07, 73 P.3d 46, 60-61 (2003) (adopting the elements of IIED prescribed by the Restatement (Second) of Torts (1965)). The Restatement describes what constitutes "outrageous" conduct:

---

[6] By granting Bane's Motion for Reconsideration, the court is not implying what testimony Bane might be permitted to provide at trial. Rather, the court bases its decision on the plausible argument that Bane may testify at Tulenkun's trial such that judicial economy weighs in favor of the court exercising its discretion to maintain jurisdiction over Bane's IIED claim.

[7] Because the court declined to exercise jurisdiction over Bane's IIED claim in its February 19, 2008 Order, the court did not address the merits of Defendant's Motion for Summary Judgment to the extent directed to Bane's IIED claim. The court therefore reaches this issue now, and at the March 5, 2008 hearing allowed further argument on whether summary judgment should be granted on Bane's IIED claim.

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.  Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.  Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

Restatement (Second) of Torts § 46, cmt. d. (1965).  "The question whether the actions of the alleged tortfeasor are . . . outrageous is for the court in the first instance, although where reasonable persons may differ on that question it should be left to the jury."  *Nagata v. Quest Diagnostics Inc.*, 303 F. Supp. 2d 1121, 1127 (D. Haw. 2004) (*citing Shoppe v. Gucci Am., Inc.*, 94 Haw. 368, 387, 14 P.3d 1049, 1068 (2000)).

Hawaii "courts have generally been reluctant to define conduct as outrageous."  *Id.* (*citing Shoppe*, 94 Haw. at 387, 14 P.3d at 1068 (finding that abusive verbal attacks by an employer directed at an employee did not rise to the level of outrageous conduct as a matter of law); *Keiter v. Penn Mut. Ins. Co.*, 900 F. Supp. 1339, 1348 (D. Haw. 1995) (finding that the defendant's conduct which resulted in a significant increase in the premium payment on plaintiffs' life

insurance policy was not outrageous conduct as a matter of law); *and Lapinad v. Pacific Oldsmobile-GMC, Inc.*, 679 F. Supp. 991, 996 (D. Haw. 1988) (stating that an employer must have engaged in conduct beyond merely firing an employee for unfair reasons in order for the conduct to possibly be considered outrageous)).

In *Shoppe*, 94 Haw. at 387, 14 P.3d at 1068, the Hawaii Supreme Court affirmed summary judgment dismissing an employee's IIED claim where her manager had (1) verbally attacked her by yelling "you have to start doing your job" and slamming down the phone, (2) singled her out to wear more makeup because the company "is aiming for a much younger look," and (3) on one occasion "chastised plaintiff in front of other employees about her attire and need to comb her hair."  *See also Machado v. Int'l Ass'n of Heat & Frost Insulators & Asbestos Workers*, 454 F. Supp. 2d 1056, 1063 (D. Haw. 2006) (finding that violations of collective bargaining agreement and attempts to remove plaintiff from his job were not outrageous conduct).

While "sexually harassing behavior, racial slurs, and accusations of criminal conduct could all possibly be considered outrageous conduct," *see Nagata*, 303 F. Supp. 2d at 1128 (*citing Lapinad*, 679 F. Supp. at 996), conduct that does not fit into any of these categories may still raise a question of fact.  *Cf. id.* (determining that defendant's delay in disclosing error in drug test resulting in

termination from employment could be considered outrageous).  For example, a question of fact may exist where the plaintiff alleges that the defendant retaliated against her for engaging in protected activity.  *See Lopes v. Kapiolani Med. Ctr. for Women & Children*, 410 F. Supp. 2d 939, 957 (D. Haw. 2005) (*citing Kalawe v. KFC Nat'l Mgmt. Co.*, 1991 WL 338566, at *5 (D. Haw. July 16, 1991)).

Construing the facts in the light most favorable to Bane, the court finds that Bane has not raised a genuine issue of material fact that Defendant's conduct toward her was outrageous.  In support of her IIED claim, Bane alleges that (1) Defendant manipulated the job referral process in March 2004 to prevent her from a receiving a job referral, Bane Supplemental Decl. ¶ 7; (2) a San Francisco Dispatcher yelled at her when she complained about Defendant's conduct, *Id.* ¶ 10; and (3) in response to her complaints, Duvall told her "you want to make it hard for me?  I know a lot of people, want to make it hard for me, I can make it hard for you too."  *Id.*, Pls.' Ex. D, 29.  These incidents as a matter of law are "not so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community" to support an IIED claim.  *See* Restatement (Second) of Torts § 46, cmt. d. (1965).  The court therefore GRANTS Defendant's Motions for Summary Judgment on Bane's IIED Claim.

# V.  CONCLUSION

For the reasons stated above, the court GRANTS Bane's Motion for Reconsideration, and exercises its discretion to maintain jurisdiction over Bane's IIED claim.  In turning to the merits of Bane's IIED claim, the court GRANTS Defendant's Motions for Summary Judgment on this claim.

As a result of the court's ruling, the following Tulenken claims remain for trial: 1) Title VII claim to the extent based on job referrals; and 2) IIED claim.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, March 7, 2008.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Bane et al. v. Sailors' Union of the Pacific et al.*, Civ. No. 05-00577 JMS/BMK, Order (A) Granting Bane's Motion for Reconsideration of Order Granting in Part and Denying in Part: (1) Defendant's Second Motion to Dismiss, or in the Alternative Motion for Summary Judgment; and (2) Defendant's Supplemental Motion for Summary Judgment on Plaintiffs' IIED Claims; and (B) Granting Defendant's Motion for Summary Judgment on Bane's IIED Claims